# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| BRAYAN HERNANDEZ LICONA, <br>     Petitioner, <br><br> v. <br><br> SCOTT LADWIG, Acting Director of the New Orleans Field Office of ICE, in his official capacity, <br>     Respondent. | No. 2:26-cv-02081-SHL-atc |

## ORDER GRANTING PETITION

On January 29, 2026, Petitioner Brayan Hernandez Licona filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 after he was held in immigration detention without a bond hearing. (ECF No. 7.) He seeks not a bond hearing, but his "immediate, unconditional release," arguing that his detention is "void *ab initio*" and that "a bond hearing is an inadequate remedy in the face of the government's 'automatic stay' power and explicit defiance of judicial orders." (ECF No. 7-3 at PageID 32–33.) On January 30, the Court issued an order setting a schedule and staying the transfer of Hernandez from the West Tennessee Detention Facility. (ECF No. 8.) Respondent Scott Ladwig responded four days later. (ECF No. 14.) Hernandez replied the same day. (ECF No. 15.) For the reasons explained below, Hernandez is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Hernandez, a citizen of Honduras, entered the United States near Roma, Texas, on either May 25 or June 23, 2023. (ECF Nos. 7-3 at PageID 33; 14 at PageID 80; 14-1 at PageID 94.) "Upon arrival, [Department of Homeland Security ("DHS")] released him under the

discretionary authority of 8 U.S.C. § 1226(a)." (ECF No. 7-3 at PageID 33.)  Since his entry, he has lived in the United States "in compliance with all ICE and court requirements," with no criminal history, and with a work permit, while awaiting the result of his pending asylum application.  (ECF Nos. 7-1 at PageID at PageID 28; 7-3 at PageID 33.)

On November 3, 2025, Hernandez was apprehended in Memphis "following a baseless stop by a state trooper," according to him.  (Id.; ECF No. 15 at PageID 99.)  DHS then served him with a Notice to Appear, charging him with being "an alien present in the United States who has not been admitted or paroled" under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).  (ECF Nos. 14 at PageID 80; 14-1 at PageID 94.)  He remains in custody at the West Tennessee Detention Facility in Mason, Tennessee.  (ECF No. 7-3 at PageID 32.)  The present Petition followed, the crux of which argues that Hernandez was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Hernandez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond.  Until recently, however, most noncitizens in this situation were given bond hearings.  See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond under § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has, for decades, been interpreted to mean recent arrivals, specifically those who have not been "physically present in

2

the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  (Id.)  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).  (Id.)

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status.  As a result, all undocumented immigrants awaiting removal are detained without a bond hearing.  This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).  (ECF No. 1 at PageID 12–13, 16.)

Hernandez, who has lived continuously in the United States for more than two years, faces the risk of continued detention without a bond hearing.  His Petition alleges Due Process violations under the Fifth Amendment and a violation of his status as a member of the "Bond Eligible Class" under Maldonado Bautista v. Santacruz, No. 25-cv-01873, 2025 WL 3713982

3

(C.D. Cal. Dec. 18, 2025), which vacated ICE's July 2025 policy nationwide.  (ECF No. 7-3 at PageID 32.)  He argues that it would be futile to require him first to exhaust his administrative remedies because "the Board of Immigration Appeals (BIA) has established binding precedent in Yajure Hurtado holding that IJs lack jurisdiction to grant bond."  (Id. at PageID 34.)  He seeks a writ of habeas corpus ordering his "immediate, unconditional release."  (Id. at PageID 33.)  He argues that no lesser remedy is adequate in view of the Government's "automatic stay" power under 8 C.F.R. § 1003.19(i)(2),[1] which "allows ICE to block release by merely filing a Form EOIR-43."  (ECF No. 15 at PageID 100.)

In response, Respondent contends that Hernandez failed to exhaust his administrative remedies, the Moldonado declaratory judgment "does not apply to Petitioner or bind this Court," and that, even if the Court grants Hernandez relief, it should merely grant a bond hearing, not immediate release.  (ECF No. 14 at PageID 81.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Hernandez challenges his detention without bond as violative of his constitutional rights.  (ECF No. 7-3 at PageID 34.)  The Court first considers the threshold question of whether Hernandez should be required to exhaust his administrative remedies.  Then, the statutes are construed to determine

---

[1] See 8 C.F.R. § 1003.19(i)(2) ("In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.").

4

whether §1225 or § 1226 is applicable.  A due process analysis follows.  Finally, the appropriate manner of release is analyzed.

I.      Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when

5

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Hernandez argues that exhaustion should not be required here because 28 U.S.C. § 2241 lacks an exhaustion rule and, regardless, exhaustion would be futile.  (ECF No. 7-3 at PageID 34.)  He contends that the Sixth Circuit only treats exhaustion in cases like this as prudential, so this Court should use its discretion to waive exhaustion.  (Id.)  He also argues that exhaustion would be futile given the 2025 decision in Yajure Hurtado that IJs lack jurisdiction to preside over bond hearings.  (Id.)  Further, he asserts that the BIA cannot adjudicate constitutional claims.  (Id.)

Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Hernandez has not appealed to the BIA and received an adverse decision.  (ECF No. 14 at PageID 83.)  He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision.  (Id. at PageID 81 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  But he points to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion."  (ECF No. 14 at PageID 82.)

6

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Hernandez's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not dispute any material facts. (See ECF Nos.7-3 at PageID 33; 14 at PageID 80–81.) Thus, deciding which statute applies to Hernandez's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Hernandez is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Hernandez the chance to have a bond hearing merely because he did not appeal to the BIA[2] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

---

[2] There is no evidence that Hernandez has received an appealable decision from the immigration court. Thus, the risk of undue delay is even greater here than in cases where, for instance, an IJ held a bond hearing and denied bond.

7

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been resided in the United States for years." 29 I. & N. Dec. at 220–21. Thus, any appeal would be futile, and exhaustion is excused.[3]

**II.    Statutory Interpretation**

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>           . . .
>    (2)    Inspection of other aliens
>        (A)    In general
>              Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be

---

[3] Given that exhaustion is waived, Hernandez's additional arguments about exhaustion need not be considered. See Sharpe v. Comm'r of Soc. Sec., No. 20-CV-02732, 2022 U.S. Dist. LEXIS 106311, at *30 n.5 (N.D. Ohio Apr. 1, 2022) (collecting cases where courts in the Sixth Circuit declined to address alternative arguments in the interest of judicial economy).

>     admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained."  <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)   Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)   <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
> (2)   <u>may</u> <u>release</u> the alien on—
>       (A)   bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>             . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

9

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[4]

Hernandez argues that ICE's new interpretation of § 1225(b)(2)(A) violates due process under the Fifth Amendment. (ECF No. 7-1 at PageID 28.) He argues that 8 U.S.C. § 1226(a) applies to his detention because he is an "interior resident," and was not detained at the border as one "seeking admission" into the United States. (Id. at PageID 34–35.) He further argues that the new interpretation of § 1225(b)(2)(A) renders portions of the 2025 Laken Riley Act superfluous, and that it runs against the "major questions" doctrine, which teaches that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," Whitman v. Am. Trucking Assocs., 531 U.S. 457, 468 (2001) (Congress "does not, one might say, hide elephants in mouseholes."). (ECF No. 7-3 at PageID 35.) For these reasons, he seeks "immediate, unconditional release," arguing that a bond hearing alone "cannot cure the 'hourly loss of constitutional liberty' resulting from an illegal detention that was void *ab initio*." (Id. at PageID 36 (citing Cardona v. Ladwig, No. 25-CV-01451, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025)).)

Respondent argues that § 1225(b)(2)(A), not § 1226(a), applies to Hernandez because he "entered [the United States] without inspection or parole" and thus "remains an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border." (ECF No. 14 at PageID 83.) As a result, they assert "he is subject to mandatory detention and not entitled to a

---

[4] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . . After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . . [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

bond hearing." (Id.) They incorporate by reference their statutory arguments from previous cases such as Monge-Nunez v. Ladwig, No. 25-cv-03043, 2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025). (Id. at PageID 80.) Finally, Respondent argues that, if the Court decides that § 1226 applies to Hernandez, a bond hearing should be ordered instead of immediate release, so that an IJ can determine whether to grant Hernandez a bond. (Id. at PageID 92–93.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondent's contention that Hernandez is an "applicant for admission" who is "seeking admission." Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified). Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings. But Hernandez was not "arriving" when he was detained far away from the United States border, after having been in this country for more than two years. (ECF No. 7-1 at PageID 28.) Also, the record does not show that he was eligible for expedited removal proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts Respondent's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."). Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the

11

alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). It does violence to the statute to argue that § 1225 applies to Hernandez, who has been physically present in the United States continuously for over two years, and who is not actively crossing the border.

Further, Respondent's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself. "If possible, every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 174 (2012). But to apply § 1225(b)(2)(A) to Hernandez would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the <u>examining immigration officer</u> determines that an alien <u>seeking</u> admission is <u>not clearly and beyond a doubt entitled to be admitted</u>, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). The record does not show that Hernandez was seeking admission at the time of his detention, and nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted." (ECF No. ECF 13 at PageID 58.) The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over two years. To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondent's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous. That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond. Under subsection (c), a noncitizen with a certain criminal

history must be mandatorily detained. 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ."). But, under Respondent's reading of § 1225, all arrested noncitizens must be detained without bond. Thus, § 1226(c) would have no purpose. Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001). Hernandez's reading of the statute is the only one compatible with the presence of § 1226(c). What is more, Hernandez has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him. See § 1226(c)(1)(E)(ii).

    The plain language of § 1226(a) describes Hernandez's situation. That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Hernandez was charged with being removable and detained in west Tennessee. Thus, the Attorney General has discretion under this section. She "may continue to detain [him]" or she "may release [him] on bond." (Id.) But the Attorney General may not deny him the bond hearing to which he is entitled. See 8 C.F.R. § 1236.1(c)(8), (d)(1).

    Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in Hernandez's favor, but the Congressional intent behind § 1226(a) is also supportive. In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with criminal histories from receiving bond. Pub. L. No. 119-1, 139 Stat. 3 (2025). Congress would

13

not have added exceptions to the broad rule of § 1226(a) if, as Respondent asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.  After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

Given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for over two years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

### III.  Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's

14

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Hernandez argues that Respondent violates the Due Process Clause of the Fifth Amendment by subjecting him to a "prolonged and potentially indefinite detention without individualized custody redetermination." (ECF No. 7-1 at PageID 28.) He also argues that ICE violates the Due Process Clause by violating its "statutory and regulatory duty under the APA" in detaining him without bond. (Id.) But Respondent contends that Hernandez's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 14 at PageID 84 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).) In turn, Hernandez replies that Thuraissigiam is inapposite because it addressed "an individual apprehended only 25 yards from the border," whereas he was apprehended far from the border in Memphis. (ECF No. 15 at PageID 99–100.)

Here, because § 1226(a) applies to Hernandez, he is owed the process given to him under that statute. As for the Mathews factors, (1) Hernandez has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Hernandez's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Hernandez was present in the United States for several years, had a work permit, and had begun the asylum application process. (ECF No. 7-1 at PageID 28.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody. Also, he was not otherwise incarcerated when ICE detained him. As a result, his detention without bond violated his liberty interest, which cannot be casually tossed

15

aside. Thus, Hernandez is entitled to a bond hearing before an IJ. Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights.

Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Hernandez's petition is **GRANTED**. He is entitled to release from custody.[5]

## IV.     Manner of Release

Having determined that Hernandez must be released, the final question is whether to order Hernandez's release as an alternative to a bond hearing, or to order his release unconditionally. In the Petition, Hernandez requests "immediate, unconditional release," arguing that his detention is "void *ab initio*" and that "a bond hearing is an inadequate remedy in the face of the government's 'automatic stay' power and explicit defiance of judicial orders." (ECF No. 7-3 at PageID 32–33.)

Among the overwhelming number of district courts granting similar petitions, remedies have differed as to the manner of release. See Cardona v. Ladwig, No. 25-CV-01451, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025) (surveying approaches). Several courts, including this Court in several instances, have granted conditional release, that is, ordering the petitioner's release if the petitioner is not granted a prompt bond hearing before an IJ. See, e.g., Garcia-Sanchez v. Acuna, No. 25-cv-3115, ECF No. 12 (W.D. Tenn. Jan. 13, 2026) ("Respondents are further ordered to provide Garcia-Sanchez with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within seven days of the entry of this Order or otherwise release him."). Other courts, also including this Court at times, have granted immediate release, either pending a bond hearing—see, e.g., Moreno-Espinoza v. Ladwig, No. 25-CV-03093, 2025 WL

---

[5] Because the petition is granted on other grounds, the Court need not reach the question of whether Hernandez's status as a class member under Maldonado, 2025 WL 3713982, separately entitles him to relief.

3691452, at *10 (W.D. Tenn. Dec. 19, 2025) ("Respondent is ordered to provide Petitioner with a bond hearing . . . within seven days of the entry of this Order and to release Petitioner pending the bond hearing.")—or without reference to a bond hearing—see, e.g., Cardona, 2025 WL 3722009, at *7; Yao v. Almodovar, No. 25 CIV. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025) ("ICE is hereby ordered. . . immediately . . . to release Yao from custody.").

Release conditioned on a bond hearing is not appropriate here. Because ICE purported to detain Hernandez under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a). Rather, immediate release is the appropriate remedy for Hernandez's deprivation of liberty. See Cardona, 2025 WL 3722009, at *7 ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied, '[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and, although Petitioner's] release today cannot cure his loss of liberty since [November 3, the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so.'" (quoting Yao, 2025 WL 3653433, at *12)). Because Hernandez's detention under § 1225(b)(2)(A) is void ab initio, the appropriate remedy is to restore him to the *status quo ante* by releasing him immediately.

Next, between the two methods of immediate release—with or without reference to a bond hearing—there appears to be a distinction without a difference. After all, the Government may at any time detain an illegally present noncitizen under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one. ICE has that discretion. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained

17

pending a decision on whether the alien is to be removed from the United States."). Thus, the Court need not order a bond hearing.[6]

Because ICE's violations of § 1226(a) and of Hernandez's procedural due process rights deprived him of his liberty for three months, see Rodriguez, 2026 WL 36345, at *12 ("[Petitioner's] procedural due process rights are not violated by the very fact [he] is detained. 'Rather, [his rights] are violated because he has been detained without a hearing that accords with due process.'" Rodriguez, 2026 WL 36345, at *12 (quoting Lopez-Arevelo v. Ripa, No. EP-25-CV-3372025, WL 2691828, *11 (W.D. Tex. Sep. 22, 2025)), immediate, unconditional release is the appropriate remedy. If the Government later decides to detain Hernandez under § 1226(a), they must do so lawfully, in conjunction with a bond hearing.[7]

## CONCLUSION

For the reasons stated above, the Petition is **GRANTED**. Respondent is ordered to release Hernandez immediately. Respondent is further **ENJOINED** from pursuing Hernandez's detention under 8 U.S.C. § 1225(b)(2)(A). Respondent is **ORDERED** to file a Status Report with this Court on or before February 13, 2026, to certify compliance with this Order.

---

[6] Further, although Hernandez contends that ICE may block his release by filing at its discretion a Form EOIR-43 (ECF No. 15 at PageID 100), he is already subject to discretionary detention under § 1226(a), and thus the potential that ICE might file this form does not appear to materially affect his position.

[7] Additionally, under INA regulations, the bond hearing is not a necessary step in the decision to detain, but rather a subsequent procedure. After all, "the bond hearing is not itself an initial custody determination but an act of '*re*-determination.'" Cardona, 2025 WL 3722009, at *7 n.12 (citing 8 C.F.R. § 236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, . . . the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .")).

**IT IS SO ORDERED,** this 6th day of February, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
